Filed 8/25/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 170

Joan Tangedal and Shane Tangedal, Plaintiffs and Appellants

v.

William Mertens, Mavis Mertens, Defendants

and

Ramsey County Board of Commissioners, 

Lake Region District Health Unit, Defendants and Appellees

No. 20150324

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Michael G. Sturdevant, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Harry M. Pippin, P.O. Box 1487, Williston, N.D. 58802-1487, for plaintiffs and appellants.

Daniel L. Gaustad (argued) and Joseph E. Quinn (on brief), P.O. Box 5758, Grand Forks, N.D. 58206-5758, for defendants and appellees.

Tangedal v. Mertens

No. 20150324

McEvers, Justice.

[¶1] Joan and Shane Tangedal appeal from a summary judgment dismissing their negligence claim against the Lake Region District Health Unit and denying their motion to amend their complaint to add a Lake Region employee, Allen McKay, as a defendant to their lawsuit.  The Tangedals claim McKay’s inspection of a septic system was grossly negligent and the district court should have allowed them to amend their complaint to sue McKay in his personal capacity and should not have granted summary judgment dismissal of their claim against Lake Region.  We conclude Lake Region and McKay have immunity for their alleged acts under N.D.C.C. § 32-12.1-03(3).  We therefore conclude the court did not abuse its discretion in denying the Tangedals’ motion to amend their complaint and did not err in granting summary judgment dismissal of their claim against Lake Region.  We affirm.

I

[¶2] In September 2014, the Tangedals sued William and Mavis Mertens, Lake Region, and the Ramsey County Board of Commissioners  for damages resulting from the January 2014 collapse of a septic tank on land the Tangedals had purchased from the Mertens in 2009.  The Tangedals alleged the Mertens failed to disclose that in 2000 they built an addition to the residence on the land on top of the septic system in violation of applicable state and county regulations.  The Tangedals also alleged that, as part of the purchase and as required under North Dakota law and Ramsey County regulations, McKay, the Environmental Health Supervisor for Lake Region, inspected the septic system and negligently certified it as “expected to function satisfactorily and . . . not likely to create an insanitary condition.”  Lake Region and the Ramsey County Board answered, denying liability and alleging governmental immunity in the performance of a public duty under N.D.C.C. ch. 32-12.1.

[¶3] In June 2015, the Tangedals moved to amend their complaint to add McKay, in his personal capacity, as a defendant to their lawsuit, claiming his inspection of the septic system was reckless or grossly negligent conduct, or willful or wanton misconduct.  The Mertens, the Ramsey County Board, and Lake Region resisted the motion to amend and moved for summary judgment.  The district court denied the Tangedals’ motion to amend, ruling a claim against McKay in his personal capacity was futile and would not survive summary judgment.  The court said it would be impossible for a rational jury to find clear and convincing evidence that McKay’s actions constituted reckless or grossly negligent conduct, or willful or wanton misconduct under N.D.C.C. § 32-12.1-04(3) for personal liability against a governmental employee acting within the scope of employment.  The court also explained McKay had immunity under N.D.C.C. § 32-12.1-03(3)(f) for the Tangedals’ claims against him.

[¶4] The Tangedals conceded there was no evidence indicating the Ramsey County Board was a proper party to the lawsuit and their claim against the County Board was dismissed.  The district court thereafter denied the Mertens’ motion for summary judgment and granted Lake Region’s motion for summary judgment.  The court explained Lake Region was immune from liability because McKay’s inspection of the septic system was within the scope of performance of a public duty under N.D.C.C. § 32-12.1-03(3)(f) and no special relationship was established under N.D.C.C. § 32-

12.1-03(3)(g).  The court rejected the Tangedals’ argument that the standard under N.D.C.C. § 32-12.1-04 for a governmental employee’s liability in a personal capacity applied and created an additional exception to preclude immunity for performance of a public duty under N.D.C.C. § 32-12.1-03(3)(f).  The Tangedals thereafter settled their claim against the Mertens.

II

[¶5] The Tangedals argue: (1) the district court abused its discretion in denying their motion to amend their complaint under N.D.R.Civ.P. 15(a)(2) to add McKay as a defendant because they claim they recently learned his inspection of the septic system was reckless, grossly negligent, or wanton or willful misconduct and an amendment to add him as a defendant would not be futile under N.D.C.C. ch. 32-12.1; and (2) the court erred in granting Lake Region summary judgment because it is not immune from liability for McKay’s grossly negligent actions within the scope of his employment under that chapter.  The Tangedals’ arguments involve the interpretation of statutory provisions for governmental liability and immunity in N.D.C.C. ch. 32-

12.1 in the procedural context of their motion to amend the complaint and summary judgment.

A

[¶6] “Except as allowed by Rule 15(a)(1), a party may amend its pleading only with the opposing party’s written consent or the court’s leave.  Leave shall be freely given when justice so requires.”  N.D.R.Civ.P. 15(a)(2).  A district court has broad discretion in deciding whether to allow a party to amend the pleadings after the time for amendments has passed.  
Thimjon Farms P’ship v. First Int’l Bank & Trust
, 2013 ND 160, ¶ 28, 837 N.W.2d 327.  We review a decision on a motion to amend pleadings under the abuse of discretion standard.  
Id.
  A court does not abuse its discretion in  denying a motion to amend a complaint if the proposed amendment would be futile, and an amendment is futile if the proposed claim would not survive a summary judgment motion.  
Id.

[¶7] Summary judgment is “a procedural device for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact and inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.”  
Davidson v. State
, 2010 ND 68, ¶ 11, 781 N.W.2d 72.  In an appeal from a summary judgment, we view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of all favorable inferences that can be reasonably be drawn from the record.  
Lucas v. Riverside Park Condos. Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801.  On appeal, we decide whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  
Id.
  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.  
Id.

[¶8] Statutory interpretation is a question of law, fully reviewable on appeal.  
In re P.F.
, 2008 ND 37, ¶ 11, 744 N.W.2d 724.  The primary purpose of statutory interpretation is to determine the intention of the legislation.  
Estate of Elken
, 2007 ND 107, ¶ 7, 735 N.W.2d 842.  Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02.  Statutes are construed as a whole and are harmonized to give meaning to related provisions.  N.D.C.C. § 1-02-07.  If the language of a statute is clear and unambiguous, “the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.  If the language of a statute is ambiguous or of doubtful meaning, however, a court may resort to extrinsic aids to interpret the statute, including the object sought to be obtained, the circumstances under which the statute was enacted, and the legislative history, to determine the intention of the legislation.  N.D.C.C. § 1-02-39.  A statute is ambiguous it if is susceptible to differing but rational meanings.  
Western Gas Res., Inc. v. Heitkamp
, 489 N.W.2d 869, 872 (N.D. 1992).

B

[¶9] Before addressing the parties’ specific arguments, we outline the general statutory framework in N.D.C.C. ch. 32-12.1 for governmental liability and immunity.  Chapter 32-12.1, N.D.C.C., was enacted in 1977, 
see
 1977 N.D. Sess. Laws ch. 303, after this Court abolished governmental immunity for political subdivisions in 
Kitto v. Minot Park Dist.
, 224 N.W.2d 795, 797 (N.D. 1974), and held that political subdivisions may be liable for injuries caused by the negligence, wrongful acts, or omissions of their agents or employees.  
See
 Report of the North Dakota Legislative Council to The Forty-Fifth Legislative Assembly 173-78 (1977).  The provisions of N.D.C.C. ch. 32-12.1 are intended to enable political subdivisions “to pay and to compromise claims and judgments” and to limit exposure to potential liability.  N.D.C.C. § 32-12.1-01 (statutory statement of legislative intent); 
Olson v. University of N.D.
, 488 N.W.2d 386, 390 (N.D. 1992) (stating purpose of N.D.C.C. ch. 32-12.1 is to limit exposure to potential liability).

[¶10] Section 32-12.1-03, N.D.C.C., generally authorizes liability against political subdivisions for some claims and places limitations on liability for certain claims.  We have said that N.D.C.C. § 32-12.1-03(1) “‘provides two separate and independent grounds upon which a political subdivision can be held liable for injuries: (1) a political subdivision can be liable for injuries caused by some condition or use of property in the same manner as a private person, and (2) a political subdivision can be liable for injuries caused by the negligence or wrongful act or omission of an employee acting within the scope of the employee’s employment.’”  
M.M. v. Fargo Pub. Sch. Dist.
, 2010 ND 102, ¶ 9, 783 N.W.2d 806 (quoting 
Fastow v. Burleigh Cty. Water Res. Dist.
, 415 N.W.2d 505, 509 (N.D. 1987)).

[¶11] Section 32-12.1-03(2), N.D.C.C., limits the liability of political subdivisions to a total of $250,000 per person and $1,000,000 for any number of claims arising out of a single occurrence, regardless, of the number of political subdivisions or employees of political subdivisions involved in that occurrence.  Section 32-12.1-03(2), N.D.C.C., also provides that a political subdivision may not be held liable, or be required to indemnify an employee held liable, for punitive or exemplary damages.

[¶12] Section 32-12.1-03(3), N.D.C.C., affords immunity to a political subdivision or a political subdivision employee for certain identified types of claims and, as relevant to the Tangedals’ claim involving the septic system inspection, provides:

A political subdivision or a political subdivision employee may not be held liable under this chapter for any of the following claims:

. . . .

f. A claim relating to injury directly or indirectly caused by the performance or nonperformance of a public duty, including:

(1) Inspecting, licensing, approving, mitigating, warning, abating, or failing to so act regarding compliance with or the violation of any law, rule, regulation, or any condition affecting health or safety.

. . . .

g. “Public duty” does not include action of the political subdivision or a political subdivision employee under circumstances in which a special relationship can be established between the political subdivision and the injured party.  A special relationship is demonstrated if all of the following elements exist:

(1) Direct contact between the political subdivision and the injured party.

(2) An assumption by the political subdivision, by means of promises or actions, of an affirmative duty to act on behalf of the party who allegedly was injured.

(3) Knowledge on the part of the political subdivision that inaction of the political subdivision could lead to harm.

(4) The injured party’s justifiable reliance on the political subdivision’s affirmative undertaking, occurrence of the injury while the injured party was under the direct control of the political subdivision, or the political subdivision action increases the risk of harm.

[¶13] Section 32-12.1-04, N.D.C.C., generally deals with personal liability of political subdivision employees and differentiates between acts or omissions within and outside the scope of employment and between negligence and wrongful acts or omissions and acts or omissions constituting reckless or grossly negligent conduct, or willful or wanton misconduct.  Under N.D.C.C. § 32-12.1-04(1), an “action for injuries proximately caused by the alleged negligence, wrongful act, or omission of an employee of a political subdivision occurring within the scope of the employee’s employment or office shall be brought against the political subdivision.”  The employee may be named as a party to the action if there is any question about whether the employer’s negligence, wrongful act, or omission occurred within the scope of employment and that question may be tried separately.  N.D.C.C. § 32-12.1-04(1).  No employee may be held personally liable for the employee’s acts or omissions within the scope of employment unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct.  N.D.C.C. § 32-12.1-

04(2) and (3).  An employee acting outside the scope of the employee’s employment may be personally liable for injuries proximately caused by the employee’s negligence, wrongful act, or omission.  N.D.C.C. § 32-12.1-04(3).  A plaintiff bears the burden of establishing by clear and convincing evidence the employee was acting outside the scope of employment, or within the scope of employment in a reckless, grossly negligent, willful or wanton manner.  
Id.
  Under N.D.C.C. § 32-12.1-03(2), a political subdivision may not be held liable for punitive or exemplary damages, but an employee may be held liable for punitive or exemplary damages in certain situations under N.D.C.C. § 32-12.1-04(3).  The language of N.D.C.C. § 32-12.1-

04(4) requires a political subdivision to indemnify and save harmless an employee for any act or omission occurring within the employee’s scope of employment.

[¶14] Under N.D.C.C. §§ 32-12.1-03(2) and 32-12.1-04(2), a political subdivision employer is liable and the employee is not personally liable for money damages for injuries proximately caused by the employee’s negligence, wrongful act, or omission within the scope of the employee’s employment.  Under N.D.C.C. §§ 32-12.1-03(1) and (2), 32-12.1-04(3), and 
Binstock v. Fort Yates Pub. Sch. Dist.
, 463 N.W.2d 837, 841-42 (N.D. 1990), a political subdivision employer and an employee may be jointly liable if the employee causes an injury while acting within the scope of employment in a reckless or grossly negligent manner or willful or wanton manner.  However, the political subdivision employer may not be liable for punitive damages under N.D.C.C. § 32-12.1-03(2), but the employee may be liable for punitive damages under N.D.C.C. § 32-12.1-04(3).  Under N.D.C.C. §§ 32-12.1-03(1) and 32-12.1-04(3), a political subdivision employer is not liable for an employee’s acts outside the scope of employment and the employee may be liable for those acts.

C

[¶15] Within those statutory provisions, we consider the parties’ specific arguments.  The Tangedals argue McKay’s inspection of the septic system within the scope of his employment was so negligently performed that it constituted reckless or grossly negligent conduct, or wanton or willful misconduct under N.D.C.C. § 32-12.1-04(3). They argue that in granting summary judgment for Lake Region, the district court failed to harmonize the grossly negligent provisions in N.D.C.C. § 32-12.1-04(3) with language for public duty immunity in N.D.C.C. § 32-12.1-03(3)(f) and (g).  They claim the establishment of a special relationship under N.D.C.C. § 32-12.1-03(3)(g) is not the only way to avoid application of public duty immunity and ask this Court to harmonize and give effect to those statutory provisions by construing them so “[a] political subdivision or a political subdivision employee may not be held liable for claims relating to injury directly or indirectly caused by the performance or nonperformance of a public duty, including inspecting, unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct.”

[¶16] Lake Region responds the Tangedals’ claims against McKay are futile because public duty immunity precludes their claims against him.  Lake Region argues summary judgment was proper because public duty immunity under N.D.C.C. § 32-

12.1-03(f) precludes the Tangedals’ claim against Lake Region.  Lake Region contends the only way to avoid application of public duty immunity is by establishing all the elements of a special relationship under N.D.C.C. § 32-12.1-03(3)(g) and asserts there is no evidence of a special relationship in this case.

[¶17] The provisions of N.D.C.C. §§ 32-12.1-03 and 32-12.1-04 regarding immunity and liability for political subdivisions and employees in this context and their interrelationship with the public duty doctrine are not clear and are susceptible to differing rational meanings.  We conclude the provisions are ambiguous in this context and we consider extrinsic aids to determine the intention of the legislation.

[¶18] The statutory provisions in N.D.C.C. § 32-12.1-03(3)(f) for public duty immunity were enacted in 2005, 
see
 2005 N.D. Sess. Laws ch. 299, in response to 
Ficek v. Morken
, 2004 ND 158, 685 N.W.2d 98.  
See
 
Hearing on S.B. 2265 Before Senate Judiciary Comm.
, 59th N.D. Legis. Sess. (Jan. 25, 2005) (testimony of Senator Thomas Trenbeath).  In 
Ficek
, 2004 ND 158, ¶ 11, 685 N.W.2d 98 (quoting 1 D. Dobbs, 
The Law of Torts
 § 271, at 723 (2000)), we discussed the public duty doctrine and said that under that doctrine, “when a statute or common law ‘imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort.’”  In 
Ficek
, purchasers of a home sued the sellers and the City of Fargo for “problems with the home’s construction.”  
Id.
 at ¶¶ 2-3.  The purchasers alleged the City “owed a duty to ensure that all buildings are constructed according to relevant building codes and to properly inspect buildings under construction to ensure the builder is following all relevant building codes” and the City breached its duty by negligently inspecting and approving the construction of a foundation that did not meet the required building code.  
Id.
 at ¶ 4.  We rejected the City’s invitation to judicially adopt the public duty doctrine to immunize political subdivisions from liability for acts constituting a public duty.  
Id.
 at ¶¶ 1, 31.  We explained that good public policy arguments could be made for immunizing a political subdivision from liability for the inspections in that case, but we said those arguments were more appropriately addressed to the legislature rather than to the judiciary.  
Id.
 at ¶ 30.

[¶19] The 2005 legislation amended N.D.C.C. § 32-12.1-03(1) to include language that “[t]he enactment of a law, rule, regulation, or ordinance to protect any person’s health, safety, property, or welfare does not create a duty of care on the part of the political subdivision, its employees, or its agents, if that duty would not otherwise exist.”  2005 N.D. Sess. Laws ch. 299, § 2.  The 2005 legislation also adopted the current language in N.D.C.C. § 32-12.1-03(3)(f) and (g) during the legislative process.  2005 N.D. Sess. Laws ch. 299, § 2.  However, the 2005 legislation did not amend the language involving personal liability of governmental employees in N.D.C.C. § 32-12.1-04.  
See
 2005 N.D. Sess. Laws ch. 299.

[¶20] As introduced in the 2005 legislative session, the relevant language in N.D.C.C. § 32-12.1-03, provided:

3. A political subdivision or a political subdivision employee may not be held liable under this chapter for any of the following claims:

. . . .

(f) Injury directly or indirectly caused by:

(1) Inspecting, licensing, approving, mitigating, warning, abating, or inadequately or negligently failing to so act, regarding compliance with or the violation of any law, rule, regulation, or ordinance, or any condition affecting health or safety.

(2) Enforcing, monitoring, or failing to enforce or monitor conditions of sentencing, parole, probation, or juvenile supervision unless the injuries are the result of gross negligence, malfeasance, or willful or wanton misconduct.

(3) Providing or failing to provide law enforcement services to specific persons, in the ordinary course of a political subdivision’s law enforcement operations, unless the injuries are the result of gross negligence, malfeasance, or willful or wanton misconduct.

(4) Providing or failing to provide fire protection services to specific persons, in the ordinary course of a political subdivision’s fire protection operations, unless the injuries are the result of gross negligence, malfeasance, or willful or wanton misconduct.

See
 
Hearing on S.B. 2265 Before Senate Judiciary Comm.
, 59th N.D. Legis. Sess. (Jan. 25, 2005) (testimony of Senator Thomas Trenbeath).

[¶21] During the 2005 legislative process, that introduced language in N.D.C.C. § 32-12.1-03(3)(f) was amended to the current language in N.D.C.C. § 32-12.1-

03(3)(f) and (g), which resulted in the enactment of the special relationship language in subdivision (g) and deletion of language about gross negligence, malfeasance, or willful or wanton misconduct in the introduced version of N.D.C.C. § 32-12.1-

03(3)(f)(2), (3), and (4).  
House Political Subdivisions Comm. Work Session on S.B. 2265
, 59th N.D. Legis. Sess. (March 17, 2005).  According to a statement by a proponent of the amendment, Representative Kim Koppelman, the amendment was made “to be sure [political subdivisions] have the protection they need—and at the same time we wanted to make sure that we in essence weren’t returning to the Sovereign Immunity Doctrine.”  
Id.
 (statement of Representative Kim Koppelman).  Representative Koppelman explained he met with a representative from the attorney general’s office and learned the introduced S.B. 2265 did not contain the public duty doctrine.  
Id.
  Representative Koppelman stated the public duty doctrine describes a political subdivision’s general duty to provide general services and not a specific duty to any one individual but in some egregious cases the governmental immunity imposed by the public duty doctrine could be pierced in specific cases involving a special relationship.  
Id.
  Representative Koppelman then described the four elements in the amendments necessary to establish a special relationship for an exception to the public duty doctrine, which gives the public some recourse against claims of governmental immunity.  
Id.

[¶22] The legislative history evidences an intention that the special relationship language was adopted to provide the public with some recourse in cases involving claims for public duty immunity and requires a special relationship to be established before there can be liability for conduct occurring during the performance or nonperformance of a public duty.  Those changes were in addition to the amendment in N.D.C.C. § 32-12.1-03(1) that the enactment of a regulation or ordinance to protect health, safety, property, or welfare does not create a duty of care on the part of a political subdivision if the duty would not otherwise exist.  The legislative history does not evidence an intention to create an exception to the public duty doctrine based on claims of gross negligence.  Rather, the legislative history evidences an intention that if a special relationship is established under N.D.C.C. § 32-12.1-03(3)(f) and (g), a political subdivision may be liable for damages for injuries proximately caused by the negligence or wrongful act or omission of an employee acting within the scope of the employee’s employment. Under that language, an employee may be personally liable in the context of the performance or nonperformance of a public duty if a special relationship is established and if the employee’s actions constitute reckless or grossly negligent conduct, or willful or wanton misconduct.

[¶23] When the provisions of N.D.C.C. ch. 32-12.1 are considered together to harmonize and give meaning to each provision, we conclude a political subdivision and an employee may not be held liable for a claim for an injury caused by the performance or nonperformance of a public duty unless a special relationship is established.  Under those provisions and the existence of a special relationship, the political subdivision may be liable if the employee’s actions are within the scope of employment and the employee may be personally liable if the employee’s conduct within the scope of employment constitutes reckless or grossly negligent conduct, or willful or wanton misconduct.  
See
 
Binstock
, 463 N.W.2d at 841-42 (holding political subdivision employer and employee may be jointly liable if employee caused injury while acting within scope of employment in a reckless or grossly negligent manner, or willful or wanton manner).

[¶24] Here, an invoice for McKay’s septic inspection identifies the customer as Real Estate 7, the real estate agent for the Mertens, and the Tangedals have proffered no evidence to establish the existence of the four elements of a special relationship between them and Lake Region or McKay under N.D.C.C. § 32-12.1-03(3)(g).  In the absence of any claim or evidence of a special relationship, we conclude Lake Region and McKay have immunity under N.D.C.C. § 32-12.1-03(3)(f) and (g) for the Tangedals’ claims.  We conclude the summary judgment and denial of the motion to amend the complaint were proper because Lake Region and McKay have immunity for the alleged acts under N.D.C.C. § 32-12.1-03(3)(f) and no special relationship has been claimed under N.D.C.C. § 32-12.1-03(3)(g).  Because no special relationship was established, it is not necessary for us to consider whether McKay’s conduct was grossly negligent.  We therefore conclude the district court did not abuse its discretion in denying the Tangedals’ motion to amend their complaint and did not err in granting summary judgment.

III

[¶25] We affirm the summary judgment.

[¶26] Lisa Fair McEvers

Carol Ronning Kapsner

Jay Schmitz, D.J.

Gerald W. VandeWalle, C.J.

[¶27] The Honorable Jay A. Schmitz, D.J., sitting in place of Crothers, J., disqualified.

Sandstrom, Justice, concurring in the result.

[¶28] I agree with the result reached by the majority.  I would reach that result by relying on the words of the statutes and the provisions of N.D.C.C. § 1-02-07 that the particular prevails over the general.

[¶29] Dale V. Sandstrom